IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLANCHE A. BROWN,           : | |
|     Plaintiff,            : | |
|                  : | CIVIL ACTION |
| v.           : | |
|                  : | NO. 15-1593 |
| JENNA MERCADANTE, et al.,    : | |
|     Defendants.            : | |

| | |
|---|---|
| BLANCHE A. BROWN,           : | |
|     Plaintiff,            : | |
|                  : | CIVIL ACTION |
| v.           : | |
|                  : | NO. 15-5178 |
| UNITED STATES OF AMERICA     : | |
| (COATESVILLE VA MEDICAL CENTER) : | |
|     Defendant.            : | |

## MEMORANDUM

**Tucker, C.J.**                                                                         **April 6, 2016**

Presently before the Court are Defendants Jenna Mercadante, Ira Kedson, Bernadette Hayburn, Kristin Sudol, Edward Moon, and Stephen Cavicchia's ("Individual Defendants'") Motion to Dismiss Plaintiff's Complaint (Doc. 10), Plaintiff's Response in Opposition (Doc. 14), Plaintiff's "Motion for Request for Court Review of Defendant's Certification of 'Scope of Employment' Immunity" (Docs. 8, 12), Defendants' Response in Opposition (Doc. 15), and Plaintiff's Reply (Doc. 17).  Also before the Court is Defendant United States of America's ("Government's") Motion to Dismiss Plaintiff's Complaint (Doc. 19) and Plaintiff's Response in Opposition (Doc. 20).

Upon consideration of the parties' submissions and for the reasons set forth below, the Court GRANTS the Individual Defendants' Motion to Dismiss, DENIES Plaintiff's "Motion for Request for Court Review," and GRANTS the Government's Motion to Dismiss.

## I. PROCEDURAL HISTORY

The Court recounts the procedural history of this case before reciting the factual background. Plaintiff filed an underlying administrative claim against the U.S. Department of Veterans Affairs on November 4, 2014. On April 14, 2015, Plaintiff filed a Complaint against the Individual Defendants alleging *Bivens* claims[1] and claims under various federal and state statutes, regulations, and agency directives.[2] Doc. 3.[3] On September 29, 2015 and again on November 16, 2015, Plaintiff filed a "Motion for Request for Court Review of Defendant's Certification of 'Scope of Employment' Immunity."[4] Docs. 8, 12 [hereinafter *Plaintiff's Court Review Motion*]. The Individual Defendants filed a joint Motion to Dismiss on November 2, 2015, to which Plaintiff responded on December 7, 2015. Docs. 10, 14. On December 15, 2015, the Individual Defendants responded to Plaintiff's Court Review Memo. Doc. 15. Both the

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Plaintiff's claims against the Individual Defendants as they appear in the Complaint are as follows: (1) Violation of 1st and 9th Amendments, (2) Deprivation of Rights under 13th and 8th Amendments, (3) Violation of Rights to Equal Protection, (4) Unlawful Retaliation and Harassment and Patient Abuse, (5) Human Subjects Abuses, (6) Lack of Informed Consent, (7) Violation of Patient Bill of Rights, (8) Violation of Public Trust, (9) Betrayal of Trust and Fiduciary Loyalty, (10) Negligent and Corruptive Supervision and Training, (11) Conflict of Interest/Failure to Disclose, (12) Intentional Unlawful Discrimination, (13) Intentional Discrimination in Violation of Title VI Section 601, 38 C.F.R. § 17, 45 C.F.R., 42 U.S.C. § 18116, Section 1557, 38 C.F.R. § 18.3-18.4, 42 U.S.C. § 2000d, (14) Intentional Infliction of Mental Anguish and Emotional Distress, (15) Deprivation of Rights Under Pennsylvania Constitution, (16) Falsification and False Statements, (17) Forgery, (18) Spoliation/Fabrication and Alteration of Records, (19) Fraud and Deception, (20) Conspiracy Against and to Deprive of Rights, (21) Defamation, (22) Unprofessional and Immoral Conduct, (23) Improper and Unlawful Utilization of Assessment, (24) Unauthorized Recording of Patient's Voice, (25) Failure to Conform to Professional Standards, (26) Gross Negligence and Willful Misconduct, (27) Reckless Endangerment, and (28) Unprofessional and Immoral Conduct.

[3] Unless otherwise noted, citations to the record are to the record of Civ. No. 15-1593.

[4] Plaintiff twice submitted the same memorandum with accompanying exhibits, which appear as docket entries #8 and #12. In conducting its analysis, the Court refers to the later-entered memorandum.

Individual Defendants' Motion to Dismiss and Plaintiff's Court Review Motion are now ripe for review.

In a separate action, Plaintiff filed an Amended Complaint against the Government on October 21, 2015, alleging violations of the Federal Tort Claims Act ("FTCA"), various federal and state statutes, regulations, and agency directives.[5]  Civ. No. 15-5178, Doc. 7.  The matter was then consolidated with the action against the Individual Defendants under Civil Action No. 15-1593.  Doc. 18.  The Government filed its Motion to Dismiss the Amended Complaint on February 10, 2015.  Doc. 19.  Plaintiff responded on March 16, 2016 and the Government's motion is now ripe for review.

## II.     FACTUAL BACKGROUND[6]

### A. Factual Allegations as to the Individual Defendants

Plaintiff Blanche A. Brown, acting *pro se*, alleges twenty-eight counts in her Complaint against six employees of the Coatesville Veterans Affairs Medical Center ("CVAMC") in their individual capacity.  Plaintiff is a military veteran who suffers from military trauma and post-surgery, post-traumatic stress.  The facts comprising her Complaint involve her psychiatric treatment while a patient at the CVAMC during the period between 2011 and the present.

---

[5] Plaintiff's claims against the Government as they appear in the Amended Complaint are as follows: (1) Refusal to Provide Treatment/Services, (2) Retaliation/Reprisal, (3) Harassment, Intimidation, Threats, (4) VA Police Malicious Prosecution, (5) VA Police Abuse of Process, (6) Patient Abuse, Neglect, and Omission of Care, (7) Failure to Protect from Abuse and Retaliation and Failure to Report Abuse, (8) Exploitation and Abuse of Vulnerable Populations, (9) Records Falsification/False Reporting/False Statements, (10) Discrimination and Retaliation in Federal Programs and Public Accommodations, (11) Lack of Informed Consent, (12) Failure to Communicate/Inform of Condition, (13) Obstruction and Cover Up, (14) Abuse of Government Position and Authority, (15) Negligent Hiring and Supervision, (16) Negligent Investigation, (17) Privacy Violations, (18) Entrapment, (19) Unauthorized Disclosure of Patient Information, (20) Patient Abandonment, (21) Negligent Infliction of Emotional and Mental Distress, (22) Injunctive Relief.

[6] The Court recites only well-plead facts appearing in the Complaint for Civ. No. 15-1593 and Amended Complaint for Civ. No. 15-5178.  It omits statements that are irrelevant to Plaintiff's claims as well as conclusory or speculative assertions.

On June 8, 2011, Plaintiff was admitted to the CVAMC following a triple bypass heart surgery at a nearby hospital. She was placed in the care of Defendant Dr. Bernadette Hayburn for pain management therapy. From July to December 2011, Plaintiff and Defendant Hayburn had eight in-person therapeutic sessions during which Plaintiff felt that her medical condition and concerns were being minimized. Also at this time, Defendant Hayburn noted in Plaintiff's file that Plaintiff exhibited traits of an Axis II psychological disorder. On or about December 2011 or January 2012, Defendant Hayburn had Plaintiff complete a "personality profile assessment," purportedly to help Plaintiff's medical care team make informed decisions about treatment.

In early 2012, Plaintiff began working with Defendant Jenna Mercadante, a psychology intern at the time, who continued to administer assessments to Plaintiff. In March 2012, Defendant Mercadante told Plaintiff that she may be suffering from post-traumatic stress disorder ("PTSD") related to her heart surgery.

In April 2012, Plaintiff had her first appointment with Defendant Dr. Kristin Sudol-Regan.[7] Plaintiff reports that, during her sessions with Defendant Sudol-Regan, their relationship deteriorated when Plaintiff expressed concerns about the validity of her personality profile assessment and HIV and hepatitis testing. Plaintiff felt that Defendant Sudol-Regan was harassing and retaliating against Plaintiff for raising such questions. As a result, Plaintiff suffered "an emotional meltdown and became suicidal." Compl. ¶ 47, Doc. 3. She then withdrew from Defendant Sudol-Regan's care.

In August 2012, Defendant Mercadante contacted Plaintiff about meeting to discuss her personality profile assessment. Plaintiff met with Defendant Mercadante and Defendant Dr. Ira

---

[7] Dr. Sudol-Regan is named in the Complaint and Amended Complaint as either "Dr. Sudol" or "Dr. Sudol-Regan."

Kedson, the intern supervisor, and Defendant Mercadante attempted to describe Plaintiff's psychological pathology. Plaintiff alleges that Defendant Mercadante began "gaslighting" her by "trying to convince Plaintiff that she had psychological pathology when in fact Plaintiff simply had a psychological INJURY (PTSD) and not severe mental illness." *Id.* ¶ 53. A month later, Defendant Kedson entered a formal diagnosis of Axis II disorder in Plaintiff's file. Despite Plaintiff's repeated requests that the Axis II diagnosis be removed because of its stigmatizing effects, Defendant Kedson did not remove the entry.

In March and early April 2013, Plaintiff obtained her patient file from Lebanon VAMC,[8] which indicated that Plaintiff had PTSD and did not have an Axis II disorder. In the following months, Plaintiff presented these documents to Defendants Kedson and Sudol-Regan, neither of whom altered Plaintiff's Axis II disorder diagnosis. In November 2013, Plaintiff obtained her records from the CVAMC. In them, she found documentation that she believes demonstrated that the assessments she underwent were "unwarranted and medically un-necessary [sic]." *Id.* ¶ 79.

Plaintiff avers that the Individual Defendants embarked on a campaign of psychological abuse by diagnosing her with a stigmatizing Axis II disorder. She cites progress notes made by the Individual Defendants in her records as evidence of intentional conduct. She also claims that she was used as an "uncompensated Human Test Dummy [sic]" for the CVAMC's intern training program. Compl. ¶ 103.

**B. Factual Allegations as to the Government**

Plaintiff alleges twenty-two claims against the Government in an Amended Complaint. Many of the facts alleged as to the Government are substantially similar to those alleged against

---

[8] It is unclear from the pleadings when Plaintiff was a patient at the Lebanon VAMC or when she received a diagnosis of PTSD there. *See* Compl. ¶ 65.

the Individual Defendants, as recited above.  The following are additional facts appearing in the Amended Complaint.

Plaintiff claims that, from 2011 to 2014, she repeatedly told CVAMC employees that she believed she had PTSD, but they failed to treat her accordingly.  She alleges that, by diagnosing her with an Axis II condition, the Government denied her of VA benefits because such a condition is not compensable.  Plaintiff attempted to commit herself to the Wilmington VAMC, but was unsuccessful.  Frustrated by her continued mistreatment at the CVAMC, in August 2013, Plaintiff sent correspondence to Defendant Hayburn, "in which she warned [Defendant Hayburn] and her colleague [Defendant Sudol-Regan] to 'STAY AWAY FROM ME' and referred to them as '*Evil*' [sic] and '*Nazis*'."  Civ. No. 15-5178, Am. Compl. ¶ 87, Doc. 7.  Plaintiff "promised that if they approached her in an aggressive manner, that she would DEFEND HERSELF BY ANY MEANS NECESSARY . . . ."  *Id.*  Plaintiff also sent faxes to various offices within the CVAMC asking that other employees intervene on her behalf regarding her care.

On September 11, 2013, Plaintiff received a citation for disorderly conduct from the CVAMC police in relation to her letter to Defendant Sudol-Regan.  Plaintiff claims that the citation and ensuing court hearing were based on false charges and were attempts to intimidate her.  Plaintiff complains that Officer J. Sloan, who executed the citation, harassed and threatened her.  According to Plaintiff, these actions by the Government were in furtherance of a campaign of "retaliation, abuse and railroading" for her attempts to change her Axis II diagnosis to one of PTSD.  *Id.* ¶ 98.  Plaintiff states that such conduct was unfounded because she was affirmatively diagnosed for PTSD at the Lebanon and Wilmington VAMCs.

### III. STANDARD OF REVIEW

#### A. Federal Rule of Civil Procedure 12(b)(1)

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). If the challenge is a facial one, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* If the challenge is a factual one, "the court may consider evidence outside the pleadings." *Id.* In evaluating a factual challenge, the court does not attach a presumption of truth to the plaintiff's allegations. *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 (3d Cir. 2013). Whichever type of challenge the defendant mounts, the plaintiff bears the burden of showing that subject matter jurisdiction exists. *Gould Elecs. Inc.*, 220 F.3d at 178.

#### B. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the court evaluates the well-plead factual allegations of the complaint, accepts their veracity, and determines whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). The plaintiff must plead more than "labels and conclusions" or "unadorned, the defendant-unlawfully-harmed-me accusation[s]." *Ashcroft*, 556 U.S. at 678.

Courts in the Third Circuit undertake a three-step analysis in evaluating a Rule 12(b)(6) motion. *Santiago*, 629 F.3d at 130. First, the court identifies the elements a plaintiff must plead

to state a claim. *Id.* Second, the court strikes conclusory allegations, which are not entitled to the assumption of truth. *Id.* Third, the court considers the well-plead factual allegations, assumes their veracity, and determines whether they plausibly give rise to an entitlement to relief. *Id.* In evaluating well-plead factual allegations, the court is to construe the complaint in the light most favorable to the plaintiff. *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011).

Further, when evaluating a *pro se* complaint, the court is to hold the pleading to "less stringent standards than formal pleadings drafted by lawyers[.]" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Nevertheless, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft*, 556 U.S. at 678).

## IV. DISCUSSION

### A. The Individual Defendants' Motion to Dismiss

The Individual Defendants move for dismissal on a number of grounds: (1) the Complaint alleges a claim of medical negligence, not a *Bivens* action, and 38 U.S.C. § 7316 ("VA Immunity Statute") applies to immunize the Individual Defendants, (2) Plaintiff failed to exhaust her administrative remedies under the VA Immunity Statute, (3) the Individual Defendants are entitled to qualified immunity, (4) Plaintiff's theory of liability by respondeat superior against Defendants Moon and Cavicchia is impermissible in a *Bivens* action, (5) the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6), and (6) Plaintiff failed to effect proper service on the Individual Defendants.

Plaintiff responds that her Complaint contains sufficient factual matter to state a plausible claim for relief. She describes the Individual Defendants' motion as "a frivolous boiler-plate

Motion to Dismiss based on gross mischaracterization of Plaintiff's claim; misapplication of the Civil Rules of Procedures and Laws as well as a hodgepodge of unsubstantiated submissions." Pl.'s Brief in Opp. to Mot. to Dismiss 7, Doc. 14.  She continues, "Plaintiff contends that the factual information supports BOTH a '*Bivens-Type*' CONSTITUTIONAL TORTS claim AND a Medical Negligence Claim—which are NOT mutually exclusive." *Id.* at 8.

The Court first addresses the Individual Defendants' contention that the VA Immunity Statute precludes a *Bivens* claim and they are immune from suit.  Such an argument is a facial challenge to subject matter jurisdiction, so the Court considers the Complaint in the light most favorable to the Plaintiff.  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, an individual has an implied private right of action against federal officers acting under color of law for violations of his or her constitutional rights.  403 U.S. 388, 395–96 (1971).  A *Bivens* claim, however, "is not an automatic entitlement[.]"  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).  To determine whether a *Bivens* remedy is available, the court must undertake a two-step inquiry.  First, "there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."  *Id*.  Second, "even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation."  *Id.* (internal quotation marks omitted).

The Individual Defendants argue that the VA Immunity Statute applies to Plaintiff's claims.  In § 7316(a)(1), the VA Immunity Statute provides for remedies under the FTCA for malpractice or negligence claims arising from the provision of health care or treatment by VA

9

health care employees. 38 U.S.C. § 7316(a)(1). The FTCA waives sovereign immunity to permit private suits against the United States for torts committed by persons acting on behalf of the United States. 28 U.S.C. §§ 1346(b)(1), 2671 *et seq*. The FTCA excepts from its waiver of immunity claims arising from intentional torts of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" 28 U.S.C. § 2680(h). Section 7316(f), however, abrogates the FTCA's intentional tort exception in cases involving VA health care employees, stating,

> The exception provided in section 2680(h) of title 28 shall not apply to any claim arising out of a negligent or wrongful act or omission of [a health care employee of the VA] in furnishing medical care or treatment (including medical care or treatment furnished in the course of a clinical study or investigation) while in the exercise of such person's duties in or for the Administration.

38 U.S.C. § 7316(f). Accordingly, the FTCA applies to intentional tort claims arising from the conduct of VA health care employees acting within the scope of the VA Immunity Statute.

No courts in the Third Circuit have visited the issue of whether the VA Immunity Statute provides an alternative, existing process that precludes a *Bivens* remedy. The Tenth Circuit, however, addressed the matter in *Ingram v. Faruque*, 728 F.3d 1239 (10th Cir. 2013). The court relied on the Supreme Court's decision in *Hui v. Castaneda*, 559 U.S. 799 (2010), that the language of 42 U.S.C. § 233(a) precluded a *Bivens* action against personnel of the U.S. Public Health Service. *Ingram*, 728 F.3d at 1246–47. Because the language of the VA Immunity Statute, 38 U.S.C. § 7316(a)(1), "mirrors" the language of 42 U.S.C. § 233(a), the *Ingram* court concluded that the former, like the latter, is an exclusive remedy precluding the creation of a *Bivens* remedy. *Id.* at 1247; *see* 38 U.S.C. § 7316(a)(1) ("The remedy against the United States provided by sections 1346(b) and 2672 of title 28 . . . *shall be exclusive of any other civil action or proceeding* by reason of the same subject matter . . . ." (emphasis added)). Further, because §

7316(f) of the VA Immunity Statute provides a remedy under the FTCA for intentional torts, a *Bivens* remedy is likewise unavailable for intentional tort claims. *Ingram*, 728 F.3d at 1249. The *Ingram* court's analysis comports with dicta from the Supreme Court decision of *Carlson v. Green*, which cites the VA Immunity Statute as an example of how "Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy." 446 U.S. 14, 20 (1980) (referring to 38 U.S.C. § 4116(a), the statutory predecessor of § 7316(a)(1)). This Court finds the reasoning of *Ingram* persuasive and accordingly holds that the VA Immunity Statute provides an alternative, existing process sufficient to protect Plaintiff's constitutional rights, thus precluding a *Bivens* claim.

The Court next considers whether Plaintiff's claims fall under the VA Immunity Statute such that the Individual Defendants may claim immunity. The VA Immunity Statute provides remedies "for damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties . . . ." 38 U.S.C. § 7316(a)(1). As noted, Plaintiff argues that her allegations support a medical negligence claim, but she goes on to say, "***This*** particular civil action is NOT an FTCA claim." Pl.'s Brief in Opp. to Mot. to Dismiss 8. Meanwhile, the Individual Defendants argue that the heart of Plaintiff's claims is an allegation of negligent psychiatric treatment by which Plaintiff was misdiagnosed with an Axis II disorder instead of PTSD.

Plaintiff's sweeping allegations against the Individual Defendants all stem from the medical care she received at the VMAC. Every Individual Defendant is a health care employee at the CVAMC and interacted with Plaintiff on the premise of providing health care. The supporting documents that Plaintiff cites are her medical records, made by the Individual

11

Defendants during the course of her care.  At the least, Plaintiff claims that the Individual Defendants were negligent in that they improperly diagnosed her and/or failed to treat her PTSD.  At the most, Plaintiff claims that the Individual Defendants intentionally engaged in a campaign of misrepresentation and deceit under the guise of providing treatment.  The Court finds that Plaintiff's allegations against the Individual Defendants, however denominated, fall within the VA Immunity Statute.  Since the FTCA, by way of the VA Immunity Statute, is an exclusive remedy for addressing Plaintiff's claims, Plaintiff may not pursue her action under *Bivens*.  Plaintiff is also barred from pursuing her statutory and common law claims since they are not based on the FTCA.  This Court therefore lacks subject matter jurisdiction over Plaintiff's claims against the Individual Defendants and dismisses the Complaint against them.[9]

### B.  Plaintiff's "Court Review" Motion

To support their argument that Plaintiff lacks subject matter jurisdiction to bring an FTCA claim for failure to exhaust, the Individual Defendants filed a certification by the United States Attorney of the Eastern District of Pennsylvania that they were federal employees acting within the scope of their employment at times relevant to Plaintiff's claims.  Plaintiff then filed a "Motion for Request for Court Review of Defendant's Certification of 'Scope of Employment' Immunity."  She challenges the certification, arguing that the Individual Defendants were not acting within the scope of their employment, the United States was "removing the individual defendants from the suit," and this left her with "no recourse or remedy for justice and accountability."  Pl.'s Ct. Review Mem. 1.  The Individual Defendants respond that Plaintiff has not raised sufficient facts to rebut the certification and review is unwarranted.

---

[9] Because the Court resolves the Motion to Dismiss on grounds that the VA Immunity Statute governs and the Individual Defendants are immune from suit, the Court will not address the Individual Defendants' remaining arguments.

This Court declines to review the Individual Defendants' scope of employment certification. The question of whether the Individual Defendants were acting in the scope of their employment is relevant in considering a claim under the FTCA. *See* 28 U.S.C. § 1346(b)(1). Here, however, Plaintiff does not raise an FTCA claim against the Individual Defendants and the Court has already determined that she may not pursue any other claims against them. Further, Plaintiff filed an FTCA claim directly against the Government, which negates the need to determine the validity of the Individual Defendants' certification. Thus, this Court dismisses Plaintiff's "Motion for Request for Court Review of Defendant's Certification of 'Scope of Employment' Immunity."

### C. The Government's Motion to Dismiss

The Government remains as the sole defendant to Plaintiff's claims in the Amended Complaint, which are limited to those arising under the FTCA. The Government moves to dismiss the Amended Complaint on a number of grounds: (1) the Amended Complaint is untimely and barred by the statute of limitations, (2) Plaintiff failed to provide a certificate of merit prepared by an expert as required for medical negligence claims, (3) the Amended Complaint fails to state a plausible claim for relief, and (4) the Amended Complaint seeks injunctive relief and declaratory judgment, but neither remedy is available under the FTCA.

Plaintiff responds that the Government has "obfuscated and omitted facts; employed hasty generalizations; while mischaracterizing, exaggerating and just flat out falsifying Plaintiff's Position [sic]." Pl.'s Brief in Opp. to Mot. to Dismiss 3, Doc. 20. She argues that her FTCA complaint is timely and she has alleged facts to state "multiple legally sufficient claims for relief." *Id.* at 26. Plaintiff also raises a host of additional statutory and regulatory grounds

upon which her claims are based, none of which appear in the Amended Complaint.  This Court will first address Plaintiff's medical negligence claim before visiting her remaining claims.

### 1. *Plaintiff's Medical Negligence Claim is Barred by the Statute of Limitations*

As previously discussed, the FTCA permits individuals to pursue claims against the United States for torts by federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C § 1346(b)(1).  To file an FTCA claim in court, the plaintiff "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing[.]" *Id.* § 2675(a).  If this presentation does not occur within two years after a claim accrues, then the claim is forever barred.  *Id.* § 2401(b).  The Government bears the burden of demonstrating that a plaintiff's FTCA claim is untimely.  *Royster v. United States*, 475 F. App'x 417, 419–20 (3d Cir. 2012) (citing *Hughes v. United States*, 263 F.3d 272, 278 (3d Cir. 2001)).

When a claim accrues for the purposes of the FTCA is a question of federal law.  *Santos ex rel. Beato v. United States*, 559 F.3d 189, 193 (3d Cir. 2009).  For FTCA claims alleging medical malpractice, accrual occurs when the plaintiff "possesses facts which would enable 'a reasonable person to discover the alleged malpractice.'"  *Hughes v. United States*, 263 F.3d 272, 275 (3d Cir. 2001) (quoting *Barren by Barren v. United States*, 839 F.2d 987, 991 (3d Cir. 1988)).  "[T]he issue of accrual . . . depends upon when and if plaintiff discovered or through the exercise of reasonable diligence should have discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating condition."  *Id.* at 277 (quoting *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983)); *see also United States v. Kubrick*, 444 U.S. 111, 119–22 (1979) (holding that, for FTCA claims involving medical malpractice, a claim

accrues when the plaintiff discovers both the existence and the cause of his injury). Accrual of an FTCA medical malpractice claim does not depend on the point at which the plaintiff becomes aware that his injury resulted from negligence. *Kubrick*, 444 U.S. at 123. Neither does accrual depend on the time of the injury. *Id.* at 120–22.

Based on the well-plead facts of the Amended Complaint, Plaintiff alleges that she was negligently misdiagnosed with an Axis II disorder at the CVAMC and suffered severe emotional distress and "psychological decompensation" as a result. Civ. No. 15-5178, Am. Compl. ¶ 99. She filed an administrative claim regarding these events on November 4, 2014. Def.'s Mem. of Law in Supp. of Mot. to Dismiss, Exh. A, Doc. 19-1. If Plaintiff's claim accrued before November 4, 2012, then it is barred under 28 U.S.C. § 2401(b). Citing the Amended Complaint, the Government argues that Plaintiff had knowledge of her injury and its cause as early as April 2011 when she requested intervention after the CVAMC failed to treat Plaintiff's PTSD. Plaintiff responds that she did not become aware of the causal relationship between her injuries and the CVAMC's actions until January 2014 during a hearing to adjudicate charges against her for disorderly conduct. She further asserts that she did not obtain her medical files, which confirms that her providers never made a PTSD diagnosis, until the spring of 2015[10] and that her injuries have been ongoing to the present.

This Court finds that Plaintiff's claim of medical negligence accrued before November 4, 2012 and is therefore barred. The focus of this inquiry is the time at which Plaintiff discovered that her doctors' failures to diagnose her PTSD resulted in her deteriorating condition. In July 2011, Dr. Hayburn diagnosed Plaintiff with an "adjustment disorder" and noted that Plaintiff exhibited "traits of a[n Axis II] Personality Disorder [sic]". Civ. No. 15-5178, Am. Compl. ¶¶

---

[10] Plaintiff's argument contradicts her averment in the Complaint that she received her patient records in November 2013. Compl. ¶ 77. This contradiction, however, has no impact on the Court's decision.

57–58. From July to December 2011, Plaintiff alleges that she should have received treatment for PTSD instead of an adjustment disorder. *Id.* ¶ 61. In December 2011, Plaintiff expressed to her primary care provider "that she believes that she had been traumatized by her (unexpected and devastating) medical emergency and the invasive medical procedure, her ICU experience and that the new trauma is overshadowing everything else." *Id.* ¶ 64. In March 2012, Plaintiff told a second primary care provider, Defendant Sudol-Regan, and Defendant Mercadante that she believed she was suffering from PTSD as a result of her emergency heart surgery. *Id.* ¶ 66. In August 2012, Plaintiff repeated her beliefs to CVAMC Drs. Kateri Brown and Ira Kedson. *Id.* ¶ 67. Finally, in October 2012, Plaintiff met with CVAMC Assistant Chief of Staff Michael Gliatto and Dr. Elizabeth Valentine, a psychologist, where she "stated that the pejorative misdiagnosis not only prejudices other clinicians against her, but equally important, the misdiagnosis of a personality disorder as a substitute for PTSD diagnosis [sic] serves as a distraction and a barrier, as it precludes treatment for Plaintiff's real condition, which is PTSD." *Id.* ¶ 70. As these facts from the Amended Complaint show, Plaintiff was aware that her deteriorating condition resulted from the CVAMC's misdiagnosis by October 2012, at the latest. When Plaintiff retrieved her medical files or the timing of her injury is of no matter. Plaintiff did not present her administrative claim until November 4, 2014, which is over two years after the accrual of her claim. Thus, this Court finds that the FTCA statute of limitations applies to bar Plaintiff's negligence claim. Accordingly, this Court dismisses Counts 1, 2, 3, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 20, and 21.[11]

---

[11] Though Plaintiff separately delineates these counts, the Court construes them as a single medical malpractice claim since they all rest on allegations of negligence by health care employees at the CVAMC.

> 2. *Plaintiff Fails to State a Claim on the Remaining Counts of the Amended Complaint*

This Court considers the remaining counts of the Amended Complaint under Rule 12(b)(6) to determine whether Plaintiff states a plausible claim for relief. These counts are malicious prosecution, abuse of process, discrimination in federal programs and public accommodations, and injunctive relief.

As discussed, claims of malicious prosecution and abuse of process are cognizable under the FTCA by operation of the VA Immunity Statute. *See* 28 U.S.C. § 2680(h) (excepting intentional torts from the FTCA waiver of immunity), 38 U.S.C. § 7316(f) (abrogating the FTCA intentional tort exception for cases involving VA health care employees). In Pennsylvania, a claim for malicious prosecution requires a plaintiff to prove: "(1) institution of proceedings against the plaintiff without probable cause and with malice, and (2) the proceedings were terminated in favor of the plaintiff." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010); *see Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). Probable cause is "a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged." *Manley*, 997 A.2d at 1239 (quoting *Turano v. Hunt*, 631 A.2d 822, 285 (Pa. Commw. Ct. 1993)). Here, Plaintiff fails to plead that her prosecution by the VA police was without probable cause. According to the Amended Complaint, Plaintiff received a citation for disorderly conduct in response to correspondence she sent to Defendant Hayburn "in which she warned the therapist and her colleague, K. Sudol, to 'STAY AWAY FROM ME' and referred to them as '*Evil*' and '*Nazis*'." Civ. No. 15-5178, Am. Compl. ¶ 87. In the same letter, "[Plaintiff] promised that if they approached her in an aggressive manner, that she would DEFEND HERSELF BY ANY MEANS NECESSARY—and resist and fight them—even if

17

killed her [sic] ('*I will Fight to the Death . . .*')." *Id.* Based on these assertions, an ordinary prudent person could believe that Plaintiff was guilty of a charge of disorderly conduct at the time. Plaintiff's ultimate acquittal does not establish a lack of probable cause for purposes of stating a malicious prosecution claim. *See Manley*, 997 A.2d at 1239 ("[A]n acquittal or other adjudication of innocence at a subsequent proceeding does not establish a lack of probable cause at the time of arrest."). Thus, this Court finds that Plaintiff fails to state a claim for malicious prosecution and Counts 4 and 19 are dismissed.[12]

Count 5 alleges a claim of abuse of process. To state a claim for abuse of process, the plaintiff must show that the defendant: "(1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Langman v. Keystone Nazareth Bank & Trust Co.*, 502 F. App'x 220, 224 (3d Cir. 2012) (quoting *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008)). To support such a claim, "the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process[.]" *Lerner*, 954 A.2d at 1238 (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)). Further, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* Plaintiff alleges that the disorderly conduct citation issued by Officer J. Sloan "was unwarranted and an over-reaction [sic]" and the officer "overstepped his authority and was attempting to intimidate [Plaintiff] and chill her attempts to exercise her First Amendment Right . . . to make patient complaints and request redress of grievances." Civ. No. 15-5178, Am. Compl. ¶¶ 90-95. After stripping away

---

[12] Count 19 of the Amended Complaint is a claim of "Unauthorized Disclosure of Patient Information." Civ. No. 15-5178, Am. Compl. ¶ 118. Plaintiff alleges that a VA Police Officer J. Sloan used her communications to her doctors as evidence to support a charge of disorderly conduct. She states, "He did this for the purpose of supporting his malicious prosecution of Plaintiff." The Court therefore construes Counts 4 and 19 together as a claim of malicious prosecution.

conclusory language, however, Plaintiff has not alleged with specificity that CVAMC did anything more than carry out the process of adjudicating her citation, even if motivated by bad intentions. This Court therefore concludes that Plaintiff fails to state a claim for abuse of process and Count 5 is dismissed.

Count 10 raises a claim of "Discrimination and Retaliation in Federal Programs and Public Accommodations." Plaintiff lists Section 601 of Title VI of the Civil Rights Act of 1964 ("Title VI"), 29 U.S.C. § 794, and the Pennsylvania Human Relations Act ("PHRA") as statutory bases for her claim. Neither Title VI nor 29 U.S.C. § 794, however, apply to the CVAMC, a federal entity. *See* 42 U.S.C. § 2000d-4a (defining "program or activity," in part, as "the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government"); 29 U.S.C. § 794(b) (same). The PHRA also does not govern conduct by the CVAMC, which neither employed Plaintiff nor provided public or housing accommodations. *See* 43 Pa. Cons. Stat. §§ 954(b), 954(i), 954(l) (defining "employer", "housing accommodations," and "public accommodation, resort or amusement"). Count 10 is therefore dismissed for failure to state a claim.

Finally, Count 22 seeks injunctive relief. The Court dismisses this claim since Plaintiff has failed to state a claim upon which injunctive relief may be awarded. Further, the FTCA does not empower district courts to enjoin the United States. *See Hatahley v. United States*, 351 U.S. 173, 182 (1956) (affirming judgment by the court of appeals which dissolved an injunction issued under the FTCA); *Redland Soccer Club, Inc. v. Dep't of the Army of the United States*, 55 F.3d 827, 848 n.11 (3d Cir. 1995) (affirming dismissal of remedial action as unavailable under the FTCA).

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Individual Defendants' Motion to Dismiss, DENIES Plaintiff's "Motion for Request for Court Review," and GRANTS the Government's Motion to Dismiss.  An appropriate order follows.